UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROMEL JOSE M.R.,[1]

Petitioner,

v.

WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER et al.,

Respondents.

No. 1:26-cv-05122-TLN-CSK

A# 220-867-608

**RELEASE ORDER**

This matter is before the Court on Petitioner Romel Jose M.R.'s ("Petitioner") First Amended Petition for Writ of Habeas Corpus (ECF No. 13) and Motion for Temporary Restraining Order ("TRO") (ECF No. 2). Respondents filed a response. (ECF No. 14.) Petitioner filed a reply. (ECF No. 15.) For the reasons set forth below, the Petition is GRANTED and the Motion for TRO is DENIED as moot.

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

This case arises from Petitioner's allegedly unlawful detention by immigration officials. (*See* ECF No. 13.) Petitioner is a noncitizen who entered the United States on or about November 30, 2021. (*Id.* at 4.) He was detained by Department of Homeland Security ("DHS") officers, then released on his own recognizance on December 2, 2021, after being placed into removal proceedings. (*Id.*) He applied for asylum and temporary protected status ("TPS"). (ECF No. 6-2 at 2.) His asylum case was closed[2] on July 25, 2025, however his TPS claim remains open. (*Id.*) Respondents do not allege that Petitioner violated any condition of his release. (*See generally* ECF No. 14.) Aside from an arrest in his native country for "usurpation of functions," which did not result in a conviction, Petitioner has no criminal history. (ECF No. 6-2 at 2.)

Nearly four years later DHS re-arrested Petitioner.[3] (ECF No. 13 at 4.) An immigration judge denied Petitioner's request for bond on December 2, 2025, concluding that the immigration court did not have jurisdiction to hold a bond hearing. (*Id.* at 4.) Petitioner then filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Florida. (*Id.* at 5; ECF No. 6-3 at 1–7.) U.S. District Judge Paul Huck granted the petition, finding that Petitioner was detained pursuant to 8 U.S.C. § 1226(a) and was thus entitled to a bond hearing. (ECF No. 6-3 at 1–7.)

In compliance with Judge Huck's order, the immigration court held a bond hearing for Petitioner on February 26, 2026. (ECF No. 13 at 7.) The immigration judge ("IJ") denied bond, finding that Petitioner was a danger and flight risk because he had been a member of the intelligence services of his native country, which had engaged in torture and repression of political dissidents. (ECF No. 6-1.) Petitioner filed a motion to enforce judgment, which was denied on April 9, 2026. (ECF No. 6-3 at 6–8.) Judge Huck concluded the government had already complied with his ruling granting the habeas petition, and that any appeal of that decision

[2] Respondents' records do not indicate the final disposition of this claim, and the Amended Petition does not address that issue either. (ECF No. 6-2 at 2; ECF No. 13 at 4–8.)

[3] Neither Respondents' records nor the Amended Petition state exactly when Petitioner was re-detained. (*See generally* ECF Nos. 6-2, 13.)

must be directed to the Board of Immigration Appeals ("BIA"). (*Id.* at 2.)

On July 6, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order in this Court, seeking release or another bond hearing. (ECF Nos. 1, 2.) The Court appointed counsel to represent Petitioner, who then filed an Amended Petition for Writ of Habeas Corpus. (ECF Nos. 7, 13.) The Petition is now fully briefed. (ECF Nos. 14, 15.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner argues his detention violates the Fifth Amendment Due Process Clause because he has not received an "individualized custody determination."[4] (ECF No. 13 at 10–13.) Respondents oppose the petition because Petitioner has already received a bond hearing and due process does not mandate another one. (ECF No. 14.) They also argue that his claims are barred by his failure to exhaust his administrative remedies.[5] (*Id.* at 3.)

---

[4] Petitioner also alleges his detention violates the Immigration and Nationality Act ("INA"). (ECF No. 13 at 10.) Finding relief warranted under Petitioner's due process claim, the Court need not address this additional claim.

[5] Respondents also argue that Petitioner's claims are barred under "the traditional elements of issue preclusion." (ECF No. 14 at 2.) "The longstanding rule [is] that res judicata has no

A. Prudential Exhaustion

Respondents argue the Court should require prudential exhaustion before permitting Petitioner to raise the instant claims, particularly because Judge Huck denied Petitioner's motion to enforce judgment on those grounds. (ECF No. 14 at 2.) Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983).

An administrative appellate record is not necessary to reach a proper decision on Petitioner's claim that his detention does not comport with due process, as the Court is in possession of all evidence necessary to resolve this claim, including a transcript of the bond hearing and the immigration judge's extensive, written ruling denying bond. (ECF Nos. 13-3, 13-4.) Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)). Finally, it is unlikely that the agency would correct its own mistake. *See, e.g.*, *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) ("Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error.") Additionally, because of the significant liberty interest at stake in this case, irreparable injury would result from requiring exhaustion. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Thus, the Court declines to require prudential exhaustion in this case.

///

---

application in habeas corpus." *Calderon v. U.S. Dist. Ct. for Cent. Dist. of California*, 163 F.3d 530, 537 (9th Cir. 1998), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003). Thus, issue preclusion does not bar Petitioner's claims.

B. Fifth Amendment Due Process Claim

Petitioner alleges his continued detention violates the Fifth Amendment Due Process Clause because he has not received an "individualized custody determination." (ECF No. 13 at 12.) Respondents argue due process does not entitle Petitioner to a second bond hearing. (ECF No. 14 at 3.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez*, 872 F.3d at 990. The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level

of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court finds Petitioner has a clear liberty interest, particularly after he was released by immigration authorities in 2021. (ECF No. 13 at 4.) Under *Morrisey*, this release implied a promise that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. Respondents do not claim that he violated any conditions of his release. (*See generally* ECF No. 14.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

*ii. Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Respondents argue that the risk of erroneous deprivation and government interest factors outweigh Petitioner's private interest in this case. (ECF No. 14 at 3.) As set forth below, the Court disagrees and finds Respondents violated Petitioner's due process rights.

*a) Private Interest*

First, as explained above, Petitioner has a substantial private interest in remaining free from detention that is unquestionably affected by Respondents' actions in detaining him. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Moreover, Respondents do not challenge Petitioner's private interest. (ECF No. 14 at 3.)

Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

*b) Risk of Erroneous Deprivation*

Second, the risk of erroneous deprivation is considerable given that Petitioner was not afforded a pre-deprivation hearing to determine whether his detention complied with constitutional protections. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner received virtually no pre-deprivation procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Further, due process puts the burden on the Government to establish by clear and convincing evidence that a noncitizen is a flight risk or a danger to the community to justify denial of bond.[6] *Id.* at 983 n.8.

---

6 The Ninth Circuit applied the canon of constitutional avoidance to construe the INA's detention statutes to provide noncitizens in prolonged detention with periodic bond hearings at which the government bears the burden of proving by clear and convincing evidence that a noncitizen is a danger to the community or a flight risk. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1198–1201 (9th Cir. 2022) (citing *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011); *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013)). However, the Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281, 296–301, 311–13 (2018), upended this circuit precedent and held the Ninth Circuit misapplied the canon of constitutional avoidance because its interpretations of 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) were not plausible because the periodic bond hearings requirements lacked "any arguable statutory foundation" and the canon of constitutional avoidance was inapposite because it "comes into play only when, after application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Id.* at 1200 (internal citations omitted). However, "[t]he Supreme Court in *Jennings* did not reach the alleged unconstitutionality of immigration detention absent the procedural requirements [the Ninth Circuit] read into the statute, and instead remanded for consideration of constitutional question in the first instance." *Id.* Accordingly, whether the Constitution requires bond hearings with the standard articulated above remains an open question in the Ninth Circuit, but district courts routinely find the standard should apply in these circumstances. *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025); *Caglar v. Wamsley, et al.*, No. 2:26-cv-

Respondents do not argue that Petitioner is a danger or a flight risk. (*See generally* ECF No. 14.) Aside from a single arrest for a nonviolent offense, which did not result in a conviction, Petitioner has no criminal history. (ECF No. 6-2 at 2.) Respondents released him on his own recognizance and allowed him to live in the community for four years before his re-detention. (ECF No. 13 at 4.) There is no dispute Petitioner did not receive a pre-deprivation hearing. It was only after Petitioner's successful habeas petition in the Southern District of Florida, and pursuant to that court's order, that he received a bond hearing. (ECF Nos. 6-1, 6-3.) Petitioner therefore spent months[7] in detention without any meaningful process whatsoever.

Judge Huck's order requiring a bond hearing pursuant to 8 U.S.C. § 1226(a) does not undermine the Court's conclusion that Petitioner was owed a pre-deprivation hearing, as this Court has previously found under materially identical circumstances. *See Charan S. v. Warden of the California City Det. Facility*, No. 1:26-CV-03017-TLN-JDP, 2026 WL 1144158 at *6–7 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months.").

Thus, the Court finds that in the absence of any safeguards prior to his detention, the risk that Petitioner has been erroneously deprived of his liberty is high. "'[T]he root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant [protected] interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)) (emphasis in original). The exception to this rule is when "extraordinary situations where some valid governmental interest is at stake . . . justifies postponing the hearing until after the event." *Boddie*, 401 U.S. at 379. The probative value of such additional procedural safeguards, including notice and a constitutionally compliant due process hearing to determine whether Petitioner's civil detention is justified, is high. *R.D.T.M.*, 2025 WL 2617255, at *4; *cf. E.A. T.-B. v. Wamsley*,

---

00787-TMC, 2026 WL 1123515 (W.D. Wash. Apr. 24, 2026).

[7] *See supra* n.3.

795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

*c) Government's Interest*

Finally, the Court recognizes the government has an interest in detaining individuals an IJ has found to be a danger or flight risk. (*See* ECF No. 14 at 3.) However, Respondents have provided no reason to believe that Petitioner was even suspected of being a danger or flight risk at the time they arrested him. Petitioner's release from immigration custody in 2021 would necessarily be based on his satisfactory demonstration that his release "would not pose a danger" and that he was "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Petitioner appears to have complied with immigration requirements since his release and Respondents do not identify any supervening developments justifying their decision to reverse course and re-detain Petitioner. Moreover, Petitioner does not have a final order of removal and his appearance at future immigration proceedings could be reasonably ensured by bond or enrollment in supervision.

Further, the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Notice and custody determination hearings are routine processes for Respondents. Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. It would be less of a fiscal and administrative burden for the government to release Petitioner and allow him to await a determination in his immigration case while at liberty rather than continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that each of the above factors weigh in Petitioner's favor and under these circumstances Respondents were required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a

hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where there is no final order of removal, no criminal history other than a single arrest for a nonviolent offense, and no individualized changed circumstances to justify re-detention — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

Respondents did not provide either notice or a pre-deprivation hearing. Moreover, Respondents did not provide a post-deprivation bond hearing until months after Petitioner's detention and only after a court order. Accordingly, Respondents violated Petitioner's due process rights.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the First Amended Petition for Writ of Habeas Corpus (ECF No. 13) and DENIES the Motion for Temporary Restraining Order (ECF No. 2) as moot. The Court further ORDERS as follows:

1. Respondents must IMMEDIATELY RELEASE Petitioner Romel Jose M.R. A# 220-867-608 from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions. **Respondents must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

**3. The Clerk of Court is directed to serve California City Correctional Center with a copy of this Order.**

4. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: August 17, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE